Mr. Robert L. Potts, Chancellor Arkansas State University, Jonesboro Post Office Box 600 State University, Arkansas 72467-0600
Dear Chancellor Potts:
I am writing in response to your request for an opinion concerning the disposition of property, including cash, seized by the University's Police Department after an investigation or prosecution has concluded. You have provided the following information and pose the following question:
 The Arkansas statutes indicate that property merely used as evidence is returned to the owner. Seized property, however, seems to be subject to sale with a portion of the proceeds going to the county. Property seized by our University Police Department becomes state property and I cannot see that the county would have any claim to any proceeds of the sale of such state property.
 It does not appear that the Marketing and Redistribution Section within the Office of State Procurement would be the appropriate entity to dispose of property seized as a result of a crime. Certainly, M R would not dispose of cash.
 Could you please advise how a University Police Department may dispose of items of property, specifically including cash, obtained during the investigation and/or prosecution of a crime? *Page 2 
RESPONSE
Several different state laws address the disposition of seized property. The exact disposition depends upon the nature of the offense committed in connection with the seizure, the location of the seizure, the nature of the property and a number of other factors discussed below. A university police officer is apparently included in the definition of an "officer" for purposes of seizing property under the Arkansas Rules of Criminal Procedure. The applicable state statutes governing the disposition of seized property, however, do not specifically mention or take account of the fact that a university police department may be the seizing agency. Although institutional law enforcement officers may be included in the broad language used in particular subchapters, legislative clarification may be necessary to address the matter. I have set out a general discussion of the state law below. The University should consult with its appointed legal counsel for legal advice concerning this issue.
As an initial matter, "institutional law enforcement officers" for universities are described and authorized at A.C.A. § 25-17-301 to-307 (Repl. 2002 and Supp. 2007). They "[h]ave all the powers provided by law for city police and county sheriffs to be exercised as required for the protection of the respective state institutions . . ." A.C.A. §25-17-304(b)(1) (Supp. 2007). They are authorized to "arrest any person upon or in [their] primary jurisdiction . . ."[1] A.C.A. §25-17-305(b)(1). Although this subchapter does not specifically mention the authority of such officers to make seizures of property in connection with their activities, such officers are apparently "officers" for purposes of the Arkansas Rules of Criminal Procedure.See A.R.Cr.P. Rule 1.6(a) (defining "law enforcement officer" and "officer" as "any person vested by law with a duty to maintain public order or to make arrests for offenses"). They thus presumably are authorized to effect seizures of property in certain instances. See,e.g., A.R.Cr.P. Rule 14 (authorizing seizure *Page 3 
of property without a warrant in connection with vehicular searches, in open fields, in emergencies, and of certain items in plain view).
Rule 15 of the Arkansas Rules of Criminal Procedure, in conjunction with applicable statutes, addresses the disposition of things seized. Rule 15 allows persons whose property is seized the opportunity to seek return of their goods. See Rule 15.2. Similarly, relevant statutes allow for the return of seized property to the owner or possessor in certain instances. See A.C.A. § 5-64-505(g)(4) (regarding forfeitures in connection with drug offenses) and 5-5-101(a) and (g)(2) (discussed below). Rule 15 and the relevant statutes, however, also govern the disposition of "contraband" and goods that are unclaimed by any owner. In this regard, Rule 15.2(g) states that:
 (g) Disposition of Contraband and Unclaimed Goods. At such time as the court finds that there is no further need for custody of the seized things, and if no motion for return or restoration of the seized things has been made, the court shall order the things to be delivered to the officials charges with the responsibility under the applicable laws for the sale, destruction, or other disposition of contraband and unclaimed goods in official custody.
(Emphasis added).
Reference must therefore be had to the "applicable laws" referred to above. Several different state laws address the disposition of seized property, or the applicable procedure to forfeit the same, where the property is not returned to the owner.
As an initial matter, property seized in connection with enforcement of the "Uniform Controlled Substances Act" (A.C.A. § 5-64-101 etseq.), is governed by A.C.A. § 5-64-505. The Arkansas Court of Appeals has described the forfeiture actions undertaken pursuant to that statute as "in rem civil proceedings, independent of any pending criminal charges. 1993 Ford Pick-UP v. State, 88 Ark. App. 172, 174,196 S.W.3d 493 (2004),citing Burnett v. State, 51 Ark. App. 144, 912 S.W.2d 441
(1995). Property subject to forfeiture under this statute may be seized by "any law enforcement agent" under certain circumstances, in some cases only with process issued by the circuit court, and in some instances without such process (including seizures incident to arrest). A.C.A. § 5-64-505(c). All seizures to which A.C.A. 5-64-505 is applicable must be accompanied by a "confiscation *Page 4 
report." Id. at (f)(2). The local prosecutor is thereafter empowered to initiate forfeiture proceedings in circuit court to forfeit the property. Several different disposition options are provided, depending upon the nature of the property. In some instances, the circuit court may enter an order allowing the law enforcement agency or prosecuting attorney to retain the seized property for official use and later to sell such property. A.C.A. § 5-64-505(h)(1)(A). Alternatively, the circuit court may simply order seized property to be sold by the retaining law enforcement agency or prosecuting attorney. In any event, A.C.A. § 5-64-505 contains strict provisions regulating the record keeping and financial management of any sums or property seized or forfeited. Moneys forfeited or sale proceeds obtained after a court-ordered forfeiture or sale are deposited into the "assets forfeiture fund" of the local prosecuting attorney (5-64-505(i)(1)(A)), and are thereafter disbursed for certain prioritized expenses (5-64-505(i)(B)). Certain balances remaining after expenses are paid are distributed "proportionally so as to reflect generally the contribution of the appropriate local or state law enforcement or prosecutorial agency's participation in any activity that led to the seizure or forfeiture or the property or deposit of moneys. . . ." A.C.A. §5-64-505(i)(1)(B)(3). In order to receive such funds, law enforcement agencies are to create "Drug Control Funds." A.C.A. § 5-64-505(i)(2)(1). Any funds thus deposited may only be used for law enforcement purposes and the "Drug Control Fund" is subject to audit by the Division of Legislative Audit. A.C.A. § 5-64-505(i)(2)(A)(v) and (vi).
The forfeiture procedures contained in A.C.A. § 5-64-505 above do not specifically mention university police officers as being covered by the statute. The statute merely refers to the seizing "law enforcement agency" or the "law enforcement agent" or "law enforcement officer" making the seizure. Presumably, however, because "institutional law enforcement officers" are now characterized as "law enforcement officers" (see A.C.A. § 25-17-304 — 306, as amended by Act 498 of 2007), rather than as "security officers," as under former law, they may be within the language of, and covered by the provisions of A.C.A. §5-64-505. The University may wish to consult with its appointed counsel, the State Drug Director, or the Division of Legislative Audit for guidance on how or whether to comply with the drug forfeiture statute.
If the seizure does not occur in connection with an offense under the Uniform Controlled Substances Act, other statutes may be relevant in addressing your question. Special individual subchapters govern the forfeiture of: 1) "conveyances" (aircraft, motor vehicles, and vessels), used in the commission of certain crimes *Page 5 
(A.C.A. § 5-5-201 — 204); 2) "contraband property" used or intended to be used in theft of livestock (A.C.A. § 5-5-301 — 306); and 3) weapons and ammunition (A.C.A. §§ 5-5-401 — 405).[2] The procedures governing the disposition of those kinds of property are set out in the applicable subchapters. Again, as with A.C.A. § 5-64-505, those subchapters make general reference to "law enforcement agencies" and provide for disposition of the property or proceeds. The language may thus be broad enough to include institutional law enforcement officers with regard to these kinds of seizures.
Other more general laws should also be considered. For example, a separate, more general provision in the municipal pension laws also addresses the disposition of the proceeds of confiscated goods. In this regard, A.C.A. § 24-11-415 provides as follows:
 (a)(1) In all cities and towns, all goods confiscated by a police officer of the city, by the sheriff, or by an officer of the Department of Arkansas State Police within the city and that are no longer needed as evidence shall be sold at auction. The auction shall be held at least annually or more often if the city determines appropriate, and the proceeds derived from the sale of all confiscated goods shall be deposited into the city's policemen's pension and retirement fund.
 (2) Subdivision (a)(1) of this section shall not supercede any existing provisions of law governing the disposition of confiscated goods.
 (b)(1) Until such time as the pension and retirement fund is actuarially sound as determined by the actuary under contract with the Arkansas Fire and Police Pension Review Board, in all cities and towns all moneys confiscated by a police officer of the city, by the sheriff, or by an officer of the Department of Arkansas State Police within the city shall be deposited into the city's policemen's pension and retirement fund. *Page 6 
 (2) Subdivision (b)(1) of this section shall not supercede any existing provisions of law governing the disposition of confiscated moneys.
 (3) At the time that the pension and retirement fund is actuarially sound, all moneys received under this subsection shall be retained by the city.
(Emphasis added).
The Arkansas Supreme Court in Board of Trustees v. Stodola,328 Ark. 194,200, 942 S.W.2d 255 (1997) had occasion to discuss the effect of this statute. In that case, the court discussed the proper disposition of property seized or forfeited in drug trafficking cases. It was necessary for the court to discuss the interplay of A.C.A. § 24-11-415
in this regard with the drug forfeiture statute (A.C.A. § 5-64-505), discussed above. The Supreme Court held, in addressing the conflicting provisions of the two statutes, that Section 5-64-505 is a specific statute concerning the forfeiture of personal property related to drug trafficking, and that Section 24-11-415 is more general and relates to proceeds from any goods confiscated in connection with any crime within the city. The court stated:
 In considering the plain language of both statutes at issue, it is manifest that both call for a different disposition of funds when the amount raised from the sale of forfeited personal property is less than $250,000. This is apparent from the mandated creation of "Drug Control Funds" under § 5-64-505(k) and the fact that law enforcement and prosecutorial agencies which receive moneys in proportion to their involvement in seizing the property must receive the money out of those funds. On the other hand, under § 24-11-415, the money pours into the city's police pension fund regardless of which law enforcement agency confiscates the goods as long as the confiscation occurs in the city.
Id. at 200.
The court held that with respect to seizures related to drug offenses, A.C.A. § 5-64-505 was the controlling provision, and that A.C.A. §24-11-415 governed the disposition of funds related to other seizures within the city limits. *Page 7 
Your question requires a discussion of the above statutes on seizures made by institutional law enforcement officers. The possible applicability of A.C.A. § 5-64-505 and A.C.A. § 5-5-201 — 204; 5-5-301
— 306; and 5-5-401 — 405 to institutional law enforcement seizures has been discussed above. Those statutes, in my opinion, may control the question with regard to those types of seizures. With regard to the application of A.C.A. § 24-11-415, however, this statute does not mention "institutional law enforcement officers" or use language broad enough to potentially include them. The intent of the statute may have been, as the Supreme Court noted above, to have "money pour into the city's police pension fund regardless of which law enforcement agencyconfiscates the goods as long as the confiscation occurs in the city." In this instance, however, institutional law enforcement officers are not within the plain language of the statute. I thus cannot opine conclusively as to whether the proceeds of property seized by institutional law enforcement officers within the city limits (and not in connection with drug offenses or the other particularly-described property), must be forwarded to the city's policemen's pension fund or, if actuarially sound, to the city. See A.C.A. § 24-11-415(b)(1) and (3). Legislative clarification is warranted on this point.
If the seized property in question was not seized in connection with enforcement of the Uniform Controlled Substances Act (or under a subchapter governing a particular type of property), and if A.C.A. § 24-11-415 is not the controlling statute, another more general statute, A.C.A. § 5-5-101, should also be mentioned. This statute provides for the return of seized property to the rightful owner or possessor, unless the property is "contraband" as defined in the statute. Under 5-5-101, "contraband" is to be destroyed, unless it is capable of lawful use. If capable of lawful use, it may, in the discretion of the court having jurisdiction, either be retained for use by the law enforcement agency responsible for the arrest, or sold. A.C.A. § 5-5-101(c)(2). The statute states, with regard to the sale, that:
 (d)(1) Unclaimed seized property shall be sold at public auction to be held by the chief law enforcement officer of the county, city, or town law enforcement agency that seized the unclaimed seized property or the chief law enforcement officer's designee.
 (2) The proceeds of the sale, less the cost of the sale and any storage charge incurred in preserving the unclaimed seized *Page 8 
property, shall be paid into the general fund of the county, city, or town whose law enforcement agency performed the seizure.
Emphasis added.
Again, this statute, which refers only to "county, city, or town law enforcement agenc[ies]" does not contemplate, or address the disposition of property seized by an "institutional law enforcement officer" who works for a state university. This statute's applicability is therefore unclear as to disposition of property where the seizure was not effected by a city, county or town law enforcement agency. Assuming the property is seized in conjunction with an arrest for an offense outside the Uniform Controlled Substances Act or other particular subchapter such as A.C.A. § 5-5-201 — 204; 5-5-301 — 306; or 5-5-401 — 405, the provisions for disposition of the property are unclear under state law. The University should consult with its appointed legal counsel for legal advice concerning this issue. Again, legislative clarification is warranted.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] "Primary jurisdiction is described at A.C.A. § 2 5-17-305(a) as follows: "An institutional law enforcement officer appointed under the authority of § 25-17-304, except to the extent otherwise limited by the executive head of the state institution or department appointing him or her, shall protect property, preserve and maintain proper order and decorum, prevent unlawful assemblies and disorderly conduct, exclude and eject persons detrimental to the well-being of the institution, prevent trespass, and regulate the operation and parking of motor vehicles upon and in all of the grounds, buildings, improvements, streets, alleys, and sidewalks under the control of the institution employing him or her, which is the institutional law enforcement officer's primary jurisdiction." Such officers may make arrests outside their primary jurisdiction in certain instances (see A.C.A. § 25-17-305(c)), and the law enforcement agency having jurisdiction may choose to take over the investigation. A.C.A. § 25-17-305(d)(2) (Supp. 2007).
[2] Section 5-66-108 (Repl. 2005) also addresses the disposition of seized "gaming devices."